**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| F.R.R., | § | |
| *Petitioner* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-01564-XR |
| | § | |
| JOSE RODRIGUEZ JR., WARDEN, | § | |
| SOUTH TEXAS FAMILY | § | |
| RESIDENTIAL CENTER; MIGUEL | § | |
| VERGARA, ACTING/DIRECTOR OF | § | |
| THE SAN ANTONIO FIELD OFFICE | § | |
| U.S. IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT; TODD M. LYONS, | § | |
| ACTING DIRECTOR OF | § | |
| IMMIGRATION CUSTOMS | § | |
| ENFORCEMENT; KRISTI NOEM, | § | |
| SECRETARY OF THE U.S. | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY; AND PAMELA BONDI, | § | |
| ATTORNEY GENERAL OF THE | § | |
| UNITED STATES; | § | |
| *Respondents* | § | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

On this date, the Court considered minor petitioner F.R.R.'s Petition for a Writ of Habeas

Corpus (ECF No. 1), the Federal Respondents' response (ECF No. 5),[1] and Petitioner's reply (ECF

No. 6). After careful consideration, the Petition (ECF No. 1) is **GRANTED**.

**BACKGROUND**

Petitioner F.R.R. is a 17-year-old minor with an approved Form I-360, Petition for Special

Immigrant Juvenile Status ("SISJ"). *See* ECF No. 1 ¶ 1; ECF No. 1-1, Exh. D (SIJS Approval). A

native and citizen of Mexico, Petitioner entered the United States as an Unaccompanied Alien

---

1 Respondent Jose Rodriguez, Jr., Warden of the South Texas Family Residential Center has joined the Federal
Respondents' response. *See* ECF No. 8.

Child ("UAC") without inspection on March 9, 2024, when he was sixteen years old. ECF No. 1 ¶ 18; ECF No. 1-1, Exh. A (Notice to Appear). He presented himself to immigration authorities and was taken to an Office of Refugee Resettlement shelter for UACs. On March 26, 2024, he was released to the care of his father, Fabian Reyes Gongora, under the Office of Refugee Resettlement's authority to release minors under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008. PL 110-457 (2008) ("TVPRA"). ECF No. 1 ¶ 18; ECF No. 1-1, Exh. B (Office of Refugee Resettlement Verification of Release).

In April 2024, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") initiating removal proceedings against him charging him with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *See* ECF No. 1 ¶ 19; ECF No. 1-1, Exh. A (NTA).

In November 2024, the 201st District Court in Travis County, Texas, found that Petitioner had been neglected by his mother in Mexico, and that it was in his best interests to remain in the United States. ECF No. 1 ¶ 20; ECF No. 1-1, Exh. C (Final Order in Suit Affecting Parent-Child Relationship). The court granted sole physical and legal custody to Petitioner's father.

Based on these state court findings, Petitioner applied for SIJS with U.S. Citizenship and Immigration Services ("USCIS"). By statute and regulation, Petitioner is deemed "paroled" by virtue of his approved SIJS petition for the purpose of applying for adjustment of status. *See* 8 U.S.C. § 1255(h)(1); 8 C.F.R. § 245.1(e)(3)(i).

In April 2025, based in part on the state court's determination that it was not in Petitioner's best interests to return to Mexico, USCIS approved Petitioner for SIJS designation. *See* ECF No. 1 ¶ 1; ECF No. 1-1, Exh. D (SIJS Approval). The main benefit of SIJS—and indeed, its core purpose—is that it confers on vulnerable young people like Petitioner the right to seek Lawful

Permanent Resident ("LPR") status while remaining in the United States, through a process called adjustment of status. *See* 8 U.S.C. 1255(h). However, because of a visa backlog, young people with SIJS must wait—often years—before they are able to apply for a green card and gain LPR status. *Id.* ECF No. 1 ¶ 21.[2] At both the time Petitioner entered the country and when he was granted SIJ status, USCIS policy stated that the agency would automatically consider granting deferred action on a case-by-case basis to SIJs who were ineligible to apply for adjustment of status solely due to unavailable immigrant visas. ECF No. 1-1, Exh. F (2022 Policy Alert). Still, Petitioner was not considered for deferred action. In June 2025, the policy was formally rescinded. *Id.*, Exh. G (2025 Policy Alert).

On November 10, 2025, over a year-and-a-half after he was released to his father's custody, Petitioner was re-arrested and detained with his father when his father was pulled over for a traffic infraction. ECF No. 1 ¶ 23. After issuing his father a ticket, the state trooper called Immigration and Customs Enforcement ("ICE"), who appeared to arrest his father and take him into custody. *Id.* Agents inquired if someone could pick up Petitioner. *Id.* His father called a family friend who agreed to pick F.R.R. up. *Id.* Nonetheless, while the family friend was on his way, ICE agents informed them that they could not wait for the friend to arrive and instead took both the father and F.R.R. into custody. *Id.* Shortly after Petitioner's detention, the government's rescission of the 2022 SIJS Deferred Action Policy was stayed, reinstating the 2022 policy. *See A.C.R. v. Noem*, No. 25-CV-3962 (EK)(TAM), 2025 WL 3228840, at *18 (E.D.N.Y. Nov. 19, 2025).

---

[2] Although SIJS allows designees to apply for adjustment, they can only do so when a visa is immediately available to them, 8 U.S.C. § 1255(h), and there is an annual limit on visas available to SIJS beneficiaries. 8 U.S.C. § 1153(b)(4). Since 2016, the number of SIJS beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card. ECF No. 1 ¶ 31.

Petitioner remains in the physical custody of Respondents at the South Texas Family Residential Center in Dilley, Texas. He asserts that his detention violates the INA and his constitutional due process rights. ECF No. 1.

## DISCUSSION

The parties dispute both whether the Court has jurisdiction to order the relief Petitioner has requested and whether Petitioner is entitled to that relief. The Court considers its jurisdiction over this case before turning to the merits. *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first.").

## I.    This Court Has Jurisdiction

As a general matter, this Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2241. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."). Respondents insist that provisions of the INA—specifically 8 U.S.C. §§ 1252(g) and (b)(9), § 1225(b)(4), and § 1226(e)—strip the Court of jurisdiction here. ECF No. 5 at 10–11. The Court disagrees.

### A.    Section 1252(g) Does Not Preclude Jurisdiction

Respondents assert that the Court lacks jurisdiction under Section 1252(g), which provides:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). But Section 1252(g) "applies only to three discrete actions that the Attorney general may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471,

482 (1999) (emphasis in original) (quoting 8 U.S.C. § 1252(g)). It "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders and thus does not implicate [S]ection 1252(g)." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025) (cleaned up) (quoting *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000)).

Petitioner is not challenging removal proceedings but seeks release—in habeas corpus—because Respondents have unlawfully detained him. *See* ECF No. 1 ¶ 37. "Such claims are not barred by § 1252(g)." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025).

### B.  Section 1252 (b)(9) Does Not Preclude Jurisdiction

Respondents argue that 8 U.S.C. § 1252(b)(9) precludes jurisdiction. ECF No. 5 at 11. Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

This provision "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up). It does not "'sweep within its scope claims with only a remote or attenuated connection to the removal of an alien'. . . [or] preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available." *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (quoting *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007)). Finally, it

5

applies only "[w]ith respect to review of an order of removal." 8 U.S.C. § 1252(b); *Ozturk v. Hyde*,

136 F.4th 382, 399 (2d Cir. 2025); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr.*

*Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS,

2025 WL 2996643, at *2 (D. Colo. Oct. 24, 2025).

Respondents' argument that Section 1252(b)(9) bars this Court's jurisdiction over the

petition fails for at least two reasons. First, Petitioner's claim—that Respondents lack "legal

authority to subject [him] to mandatory detention under § 1225 instead of detention with a bond

hearing under § 1226(a)"—"is not a review [of] an order of removal, the decision to seek removal,

or the process by which removability will be determined." *Beltran v. Noem*, No. 25CV2650-LL-

DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025); *Aguilar*, 510 F.3d at 11 ("[T]he legislative

history indicates that Congress intended to create an exception for claims 'independent' of

removal."). Because Petitioner challenges only his ongoing detention during the pendency of his

removal proceedings, "§ 1252(b)(9) does not present a jurisdictional bar." *See Jennings v.*

*Rodriguez*, 583 U.S. 281, 295 (2018).[3]

Second, Petitioner cannot "efficaciously" raise his claims "'within the administrative

proceedings' already available." *Duron*, 898 F.3d 647 (quoting *Aguilar*, 510 F.3d at 10). The core

of this dispute is whether Petitioner can be detained without bond hearing—that is, with no

administrative opportunity to contest his detention—pending a removal determination. If

Section 1252(b)(9) precluded this habeas petition, Petitioner's detention would be "effectively

unreviewable," *Jennings*, 583 U.S. at 293, especially considering the BIA's novel position that

immigration judges lack authority to even *entertain* bond requests, *see Matter of Yajure Hurtado*,

---

[3] With respect to § 1252(b)(9), *Jennings* expressly rejected an overbroad reading of "arising from" as "uncritical
literalism" that leads "to results that no sensible person could have intended." 583 U.S. at 293–94 (citation modified).
Indeed, *Jennings* described the "expansive interpretation of § 1252(b)(9)" proposed by Respondents as "absurd," and
inevitably "lead[ing] to staggering results." *Id.* at 293.

29 I. & N. Dec. 216, 220 (BIA 2025). "By the time a final order of removal was eventually entered, the allegedly [illegal] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Jennings*, 583 U.S. at 293.

### C.    Section 1225(b)(4) Does Not Preclude Jurisdiction

Curiously, Respondents assert that, under Section 1225(b)(4), judicial review of Petitioner's removability is available only through the court of appeals following a final administrative order of removal. *See* ECF No. 5 at 8, 10–11. But even under Respondents' flawed theory that the Petitioner is challenging the adjudication of his removal proceedings (rather than his detention), Petitioner's challenge to a presumably unsuccessful application for admission would not arise under Section 1225(b)(4), which governs challenges brought by an immigration officer to favorable admissibility decisions made by another officer:

> The decision of the examining immigration officer, if *favorable to the admission of any alien*, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(4) (emphasis added).

Section 1225(b)(4) is plainly inapplicable to Petitioner, who has not received any favorable determination of his admissibility. Moreover, Section 1225(b)(4) applies to challenges to favorable admissions decisions brought by *other immigration officers*. It has nothing to do with the scope of DHS's detention authority or the federal courts' jurisdiction over challenges to detention. Indeed, as another court in this District recently observed, § 1225(b)(4) does "not speak to the distinction between detention and deportability that this Court has explained is essential to the jurisdictional

analysis." *See Erazo Rojas*, 2025 WL 3038262, at *2. Accordingly, Respondents' reference to 8

U.S.C. § 1225(b)(4) is simply misplaced.

### D.    Section 1226(e) Does Not Preclude Jurisdiction

Respondents also challenge the Court's jurisdiction under 8 U.S.C. §1226(e). *See* ECF No.

5 at 1. Unlike the § 1252 subsections, this provision relates to claims brought by people challenging

their immigration detention:

> The Attorney General's discretionary judgment regarding the application
> of this section shall not be subject to review. No court may set aside any
> action or decision by the Attorney General under this section regarding the
> detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). As at least one other court in this District has noted, "this section shields only

the Attorney General's *discretionary* detention decisions." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-

337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025) (emphasis added). It does not

preclude, e.g., "challenges [to] the statutory framework that permits [the alien's] detention without

bail." *Demore v. Kim*, 538 U.S. 510, 516 (2003); *see, e.g.*, *Oyelude v. Chertoff*, 125 F. App'x 543,

546 (5th Cir. 2005) (federal courts "retain jurisdiction to review [a noncitizen's] detention insofar

as that detention presents constitutional issues, such as those raised in a habeas petition.") (citing

*Kim*, 538 U.S. at 516–17).

Given Petitioner's due process challenges, "[t]his is unlike a case in which a bond hearing

was held, an individualized assessment was made regarding the appropriateness of detaining a

noncitizen, and, in the IJ's discretion, they were denied bail." *Lopez-Arevelo v. Ripa*, 2025 WL

2691828, at *5. "In such circumstances, the Court would likely lack jurisdiction to consider a

collateral attack on that denial." *Id.* (citing *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass.

2019) ("Ultimately, Diaz Ortiz disagrees with the immigration judge's weighing of the evidence

and exercise of discretion with respect to dangerousness. The Court does not have jurisdiction to hear such a challenge.")).

In this Court's view, even setting aside Petitioner's constitutional claims, Section 1226(e)'s jurisdictional bar is inapplicable for a much simpler reason: by taking the position that Petitioner's detention is *mandatory* under Section 1225(b)(2), *see* ECF No. 5 at 2–4, 8, 12, 14–15, the Attorney General has waived any argument that Petitioner's detention was an exercise of her discretion protected from judicial review under Section 1226(e).

## II.    Petitioner's Detention Is an Unlawful Application of 8 U.S.C. § 1225(b)(2)

Moving to the merits, Petitioner claims that Respondents lack statutory authority under the INA to detain him without a bond hearing and are depriving him of due process by doing so. *See* ECF No. 1 at 22. Because the Court agrees with Petitioner's statutory arguments, it need not reach his constitutional claims.

### A.    Legal Framework for Immigration-Related Detention

The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

First, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and other recent arrivals *seeking admission* under 8 U.S.C. § 1225(b)(2). As the Supreme Court has explained, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jenning*, 583 U.S. at 297. Noncitizens detained under this provision may be released only through DHS's exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 300.

Second, the INA authorizes the discretionary detention of noncitizens in standard, non-expedited (i.e., "full") removal proceedings before an immigration judge under 8 U.S.C. § 1226. *See* 8 U.S.C. § 1229a; § 1226(a) ("[A]n alien *may* be arrested and detained. . . .") (emphasis

added).[4] Noncitizens in detention under Section 1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Last, the INA also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). This provision is not at issue in the instant matter.

For nearly three decades, Respondents consistently considered noncitizens present in the United States without having been admitted or paroled as detained under 8 U.S.C. § 1226(a), thus entitling them to bond hearings. *See, e.g.*, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination"). Consistent with this longstanding understanding, the Supreme Court recently confirmed that "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. On the other hand, "the language of §§ 1225(b)(1) and (b)(2) is quite clear": "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id*. at 297, 303.[5]

Earlier this year, Respondents adopted a novel theory that noncitizens who are present in the United States without admission or parole are ineligible for bond hearings. In July 2025, Todd Lyons, Acting Director of ICE, issued an internal memorandum (the "Lyons Memorandum") explaining that the agency had "revisited its legal position" and "determined that [Section 1225]

---

[4] Noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c).

[5] Even if this language in *Jennings* is dicta, courts in the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

of the Immigration and Nationality Act (INA), rather than [Section 1226], is the applicable immigration detention authority for all applicants for admission."[6] Ultimately, the Board of Immigration Appeals ("BIA") adopted this position in a precedential decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), holding that all noncitizens who entered the country without inspection—no matter how long they have been present in the country—are subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2).

## B.    Legal Framework for SIJS Protection

Congress created SIJS over 35 years ago to protect vulnerable immigrant children and provide them a pathway to citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJS, most recently in 2008, through the Trafficking Victims Protection Reauthorization Act, Pub. L. 110-457, § 235(d), 122 Stat. 5044.

To be granted SIJS, young non-immigrants like Petitioner must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJS designation, as

---

[6] "The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/LN4F-FJDG]. The memorandum itself was subsequently leaked by legal advocacy groups. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 24, 2025) [https://perma.cc/4Q6X-GAZC][.]" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 n.10 (D. Mass. 2025).

relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on a state juvenile court; who cannot be reunified with one or more parents because of abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

Notably, a noncitizen youth is eligible for SIJS only if he or she is "*present* in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added). SIJS is predicated on a state court finding that the youth cannot be safely reunited with parent(s), nor safely sent back to their country of origin. The design of this program, then, "show[s] a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (abrogated on other grounds). Young non-citizens can apply for SIJS upon receipt of a state court order finding they cannot be safely reunited with parent(s) nor safely sent back to their country of origin. The application process includes submitting a Form I-360 SIJS Petition to USCIS, along with the predicate state court order and other supporting evidence. *See* 8 C.F.R. § 204.11(b). USCIS then considers the application and supporting documentation to determine whether to exercise its statutory "consent function" to approve the petition. *See* 8 U.S.C. § 1101(a)(27)(J)(iii). By exercising its statutory consent function to grant SIJS, the agency recognizes the state court's determinations, including that the child's return to their country of origin would be contrary to their best interests. *Id.* § 1101(a)(27)(J)(ii).

SIJS may be revoked only for what the Secretary of Homeland Security deems "good and sufficient cause." 8 U.S.C. § 1155; 8 C.F.R. § 205.2. According to USCIS regulations, such revocation must be made upon notice to the youth in question, who must be permitted the opportunity to submit evidence in opposition to the revocation and to appeal an adverse decision. *See* 8 C.F.R. § 205.2. If status is ultimately revoked, the youth is entitled to notice and the

opportunity to appeal the decision. *See* 8 C.F.R. § 205.2(c) & (d). Revocation of a SIJS petition

may only be performed by a USCIS officer authorized to approve such petition in the first instance.

*See* 8 C.F.R. § 205.2(a).

### C.    Petitioner Cannot Be Detained Under Section 1225(b)(2)

Petitioner argues that Section 1225 does not permit his detention and that he may only be

detained under Section 1226(a). *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB),

2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025). Respondents contend, on the other hand, that

Petitioner falls under Section 1225(b)(2) because he is an "applicant for admission," which

includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. §

1225(a)(1). They further assert that Petitioner's SIJS designation is immaterial to the analysis:

> The Special Immigrant Juvenile classification does not result in a lawful
> immigration status. INA § 245(h), SIJs are deemed paroled only for
> purposes of adjustment of status. INA § 245(a)[.] They are not parolees and
> are not in a parole status. ICE may detain and remove individuals with SIJ
> classification, absent any other lawful status.

ECF No. 5 at 3 n.3.

Thus, according to the government, the question is whether Section 1225(b)(2) applies to

all noncitizens who, like Petitioner, are already in the country but entered without inspection. If

so, Section 1225(b)(2) makes Petitioner's detention mandatory. If not, Section 1226(a) applies,

Petitioner's detention is discretionary, and he is entitled to a bond hearing if he remains detained.

*See, e.g.*, *Belsai D.S.*, 2025 WL 2802947, at *5.

This is not a matter of first impression. In recent months, courts across the country,

including this one, have rejected Respondents' broad interpretation of Section 1225(b)(2). *See,*

*e.g.*, *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025

WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-

CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same); *Acea-Martinez v. Noem*, No. 5:25-cv-1390-XR, ECF No. 9. These opinions rely on several rationales, from statutory language and context to legislative history and longstanding agency practice. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases); *see, e.g.*, *Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) (noting that the BIA's interpretation in *Matter of Hurtado* was not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and was unpersuasive given its "inconsistency with prior pronouncements"); *see also id.* at * 5 (noting that Respondents' interpretation would render a recent amendment to the INA, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), "effectively meaningless").

The Court finds those opinions generally persuasive and will not restate every rationale therein. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement."). Instead, it will focus on the two factors that most clearly command against Respondents' broad interpretation: Section 1225(b)(2)'s plain language and the Supreme Court's interpretation of the relevant statutes.

To start, Section 1225(b)(2)'s language is clear. It states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings. 8 U.S.C. § 1225(b)(2)(A). In other words, Section 1225(b)(2) requires someone to be detained if three conditions are met: (1) the person is an "applicant for admission"; (2) the person is "seeking admission"; and (3) an "examining immigration officer determines" the

person "is not clearly and beyond a doubt entitled to be admitted." *Id.*; *see, e.g.*, *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at \*6 (S.D.N.Y. Aug. 13, 2025).

The term "applicant for admission" includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Because Petitioner is present in the United States and has not "lawful[ly] ent[ered] . . . after inspection and authorization by an immigration officer," he is an "applicant for admission." *Id.* §§ 1101(a)(13)(A); 1225(a)(1).

But at the time of Petitioner's detention, he was not "seeking admission." Again, admission refers to "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). When ICE detained him in November 2025, Petitioner was not seeking entry, much less "lawful entry . . . after inspection and authorization." *See Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008), *as amended* (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful *entry* of an alien after inspection, something quite different, obviously, from post-entry adjustment of status." (emphasis in original)); *Lopez Benitez*, 2025 WL 2371588, at \*6 (noting that Respondents' interpretation "would render the phrase 'seeking admission' in [Section] 1225(b)(2)(A) mere surplusage"). Because Petitioner is not "seeking admission," ICE may not detain him under Section 1225(b)(2).

If that were not enough, the Supreme Court recently discussed the relationship between Sections 1225 and 1226: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under [Sections] 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under [Section 1226]." *Jennings*, 583 U.S. at 289.

Thus, Section 1225(b)(2) applies to noncitizens "seeking admission," and Section 1226 applies to noncitizens "already in the country." Petitioner is already present in the United States, as his SIJS designation confirms. *See* 8 U.S.C. § 1101(a)(27)(J). Respondents may not detain Petitioner pursuant to Section 1225(b)(2). Because the Court concludes Section 1225(b)(2) is inapplicable, Petitioner's present detention necessarily falls under 8 U.S.C. § 1226, which entitles him to a bond hearing. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at \*5 (D. Minn. Oct. 1, 2025) ("[T]he Court concludes that § 1225(b)(2) is not applicable to Mr. D.S., he is subject to the discretionary detention regime under § 1226(a), and his continued detention with a bond hearing is contrary to the laws of the United States. If Respondents seek to continue detaining Mr. D.S., they must provide him with a bond hearing.").

## III.  Appropriate Relief

Because Petitioner cannot be detained under Section 1225(b)(2), the remaining option is Section 1226. As Respondents do not claim that Petitioner is being detained under Section 1226, however, "the Court sees no reason to consider" Section 1226 as a basis for Petitioner's current detention. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025). His detention is unlawful, and habeas relief is proper. *See also* ECF No. 5 at 2 (Respondents' acknowledgment that the only relief available to Petitioner through habeas is release from custody).

## CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**.  It is **ORDERED** that:

1.      Respondents **RELEASE** Petitioner F.R.R. from custody, under appropriate conditions of release, to a public place by **no later than 12:00 p.m. on December 6, 2025.**

2.      Respondents **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release;**

3.      The parties shall **FILE** a Joint Status Report **no later than 12:00 p.m. on December 8, 2025**, confirming that Petitioner has been released; and

4.      Respondents are **ENJOINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker pursuant to 8 U.S.C. § 1226.

The Clerk is **DIRECTED** to **CLOSE** this case. A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 5th day of December, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE